516 A.2d 1172

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Ernestine BELL, Appellee.**

Supreme Court of Pennsylvania.

Submitted Dec. 3, 1985.

Decided Oct. 24, 1986.

Petition for Allowance of Appeal
Denied Dec. 29, 1986.

336

Eric B. Henson, Steven J. Cooperstein, Philadelphia, for appellant.

Gerald A. Stein, Philadelphia, for appellee.

John W. Packel, Philadelphia, for Amicus-Defender Assoc. of Philadelphia.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

This case requires our review of the applicability and constitutionality of section 9712 of the Mandatory Minimum Sentencing Act, 42 Pa.C.S. § 9712, which requires the imposition of a minimum prison sentence of at least five years

338

upon conviction of certain enumerated felonies, where it is proven at sentencing by a preponderance of the evidence that the accused visibly possessed a firearm during the commission of the offense. Appellee was convicted in a bench trial of voluntary manslaughter in the Court of Common Pleas of Philadelphia County. That court thereafter found section 9712 of the Mandatory Minimum Sentencing Act (hereinafter "Act") inapplicable and unconstitutional as applied to appellee, and imposed a sentence of four (4) years probation. Pursuant to section 9712(d) of the Act, the Commonwealth sought appellate review of the action of the sentencing court.[1] This Court has jurisdiction to entertain this appeal under 42 Pa.C.S. § 9712(d) and 42 Pa.C.S. § 722(7).[2]

The first issue on appeal to this Court is whether section 9712 of the Act applies to appellee's conviction of voluntary manslaughter for killing the victim while "acting under a sudden and intense passion resulting from serious provocation." 18 Pa.C.S. § 2503(a). The sentencing court declined to apply section 9712 after finding that the statute is inapplicable to the facts of appellee's case.

Section 9712 provides in relevant part that:

Any person who is convicted in this Commonwealth of murder in the third degree, voluntary manslaughter,

1. Section 9712 of the Mandatory Minimum Sentencing Act provides in part:

(d) Appeal by Commonwealth.—If a sentencing court refuses to apply this section where applicable, the Commonwealth shall have the right to appellate review of the action of the sentencing court. The appellate court shall vacate the sentence and remand the case to the sentencing court for imposition of a sentence in accordance with this section if it finds that the sentence was imposed in violation of this section.

42 Pa.C.S. § 9712.

2. Section 722(7) provides that the Supreme Court shall have exclusive jurisdiction of appeals from final orders of the Court of Common Pleas in

[m]atters where the court of common pleas has held invalid as repugnant to the Constitution, treaties or laws of the United States, or to the Constitution of this Commonwealth, ... any ... provision ... of any statute of this Commonwealth,....

42 Pa.C.S. § 722(7).

rape, involuntary deviate sexual intercourse robbery ... aggravated assault or kidnapping, or who is convicted of attempt to commit these crimes shall, if the person visibly possessed a firearm during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement notwithstanding any other provision of this title or other statute to the contrary. 42 Pa.C.S. § 9712(a).

The lower court held that the legislature did not intend section 9712 to apply to killings committed under "sudden and intense passion" but only to calculated criminal acts committed by hard-core recidivist offenders. By refusing to apply a mandatory sentence to appellee's voluntary manslaughter conviction, the court below has completely disregarded the plain language of the Act.

The Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.*, provides as its most basic principle that:

When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

1 Pa.C.S. § 1921(b) (Supp.1986).

*Davis v. Government Employees Insurance Co.*, 500 Pa. 84, 89, 454 A.2d 973, 975 (1982); *Commonwealth v. Pierce*, 497 Pa. 437, 440 n. 4, 441 A.2d 1218, 1219 n. 4 (1982). When the language of a statute is clear and unambiguous, the judiciary must read its provisions in accordance with their plain meaning and common usage. 1 Pa.C.S. § 1903(a) (Supp.1986); *In re: Estate of Baker*, 496 Pa. 577, 582, 437 A.2d 1191, 1193 (1981); *Commonwealth v. Simione*, 447 Pa. 473, 480, 291 A.2d 764, 768 (1972); *In Re Stegmaier Estate*, 424 Pa. 4, 8, 225 A.2d 566, 568 (1967); *Commonwealth v. Rieck Investment Corp.*, 419 Pa. 52, 59–60, 213 A.2d 277, 281–82 (1965); *Southwest Delaware County Municipal Authority v. Aston Township*, 413 Pa. 526, 537, 198 A.2d 867, 873 (1964). It is not within judicial prerogative to disregard the principles of statutory construction and engage in a selective reading of the purposes behind the mandatory minimum sentencing law. The language con-

tained in the statute at issue is clear and explicit. The criminal act of "voluntary manslaughter" is listed as one of the seven offenses subject to a mandatory sentence if the offender visibly possessed a firearm during the crime. The court below inappropriately inquired into the intent of the legislature and the history behind the Act. When the statute's meaning is plain, there is no occasion for resorting to rules of statutory interpretation or looking to the legislative history when doing so would alter the plain meaning of the statute. *Commonwealth, Department of Public Welfare v. Matic*, 509 Pa. 164, 501 A.2d 617 (1985); *Hellertown Manufacturing Co. v. Commonwealth*, 480 Pa. 358, 365, 390 A.2d 732, 735 (1978); *Davis v. Sulcowe*, 416 Pa. 138, 143, 205 A.2d 89, 92 (1964).

The same result would be reached if we were permitted in this instance to search for legislative intent. To arrive at the trial judge's conclusion we would be required to assume that the General Assembly was unaware of the definition of section 2503(a) of the Crimes Code which it promulgated.[3] 18 Pa.C.S. § 2503(a). Such an absurd result is expressly condemned by the rules of statutory construction. 1 Pa. C.S. § 1922(1). *See Lehigh Valley Cooperative Farmers v. Commonwealth, Bureau of Employment Security Department of Labor and Industry*, 498 Pa. 521, 447 A.2d 948 (1982); *Zimmerman v. O'Bannon*, 497 Pa. 551, 442 A.2d 674 (1982); *Schaefer v. Hilton*, 473 Pa. 237, 373 A.2d 1350 (1977). Voluntary manslaughter has traditionally been recognized as a crime of passion inspired by provocation rather than motivated by malice. *Commonwealth v. White*, 492 Pa. 489, 491, 424 A.2d 1296, 1297 (1981); *Commonwealth v. Cain*, 484 Pa. 240, 245–46, 398 A.2d 1359, 1361 (1979); *Commonwealth v. Campbell*, 451 Pa. 465, 467–468, 304 A.2d 121, 122 (1973); *Commonwealth v. Donough*, 377 Pa. 46, 52, 103 A.2d 694, 698 (1954); *Common-*

3. Section 2503(a) provides in pertinent part:
A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation. . . .

*wealth v. Cargill,* 357 Pa. 510, 513, 55 A.2d 373, 374 (1947); *Commonwealth v. Flax,* 331 Pa. 145, 153, 200 A. 632 (1938); *Commonwealth v. Principatti,* 260 Pa. 587, 596, 104 A. 53, 57 (1918); *Commonwealth v. Colandro,* 231 Pa. 343, 350, 80 A. 571, 574 (1911). Section 2503(a) merely codifies the common law crime of voluntary manslaughter. Thus the deliberate inclusion of section 2503 within the enumerated crimes set forth in section 9712 shows the clearest possible intention to include a killing in the heat of passion.[4] There is therefore no basis for the trial court's conclusion that the "... Act was never intended to refer to a heat of passion killing committed by an emotionally involved, otherwise law abiding, citizen who succumbs to rage or panic and kills a lover or a family member." *Commonwealth v. Bell,* No. 1404 August Term, 1984 (Phila.C.C.P. July 19, 1984) slip op. at 4. Judicial compassion does not provide a warrant to ignore the clearest of statutory mandate.

The trial court's underlying premise that section 9712 was directed at "repeat criminals" is totally unwarranted. The enhancement of the punishment delineated under section 9712 is clearly not triggered by recidivistic behavior. In each instance it is the enumerated behavior exacerbated by the use of a firearm to facilitate its commission. It is as much in the public interest to keep guns out of the hands of those susceptible to bursts of passions as to deter those who would commit rape, robbery or any of the other enumerated offenses from using firearms. It must be remembered that, if this "emotionally involved, otherwise law abiding citizen who succumbs to rage or panic" on the occasion in question did not have the weapon, a life may have been spared.[5]

---

4. In addition to a killing in the heat of passion, section 2503(b) covers killings committed with an unreasonable belief in justification. 18 Pa.C.S. § 2503(b). These homicides also would not fall within the "deliberate criminal acts" to which the trial court attempts to confine section 9712.

5. Each of the crimes enumerated in section 9712 of the Act represents unacceptable assaultive behavior. The use of a firearm during the commission of any of the enumerated acts immeasurably enhances the threat to life or creates the likelihood of other severe bodily harm.

Having determined that section 9712 does, in fact, apply to the voluntary manslaughter conviction in question, we must address the trial court's alternative holdings that the statute violates various constitutional guarantees. The trial court concluded that section 9712 was constitutionally infirm on due process, equal protection and separation of powers grounds and that its application in the instant case would amount to cruel and unusual punishment. For the reasons that follow we find those assertions to be potently without merit.

The due process argument accepted by the trial court relies on section 9712(b) of the Act, which provides in pertinent part:

> Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing.

42 Pa.C.S. § 9712(b).

On the basis of the above language, the trial court concluded that the failure of section 9712(b) to require pre-trial notice of the Commonwealth's intention to invoke the Act in the event of a conviction for one of the Act's enumerated crimes violated appellee's right to due process. We disagree.

It is a fundamental principle of constitutional law that a challenge to a statute may not be raised in the abstract but must find its basis in an injury to the party seeking to have the enactment declared constitutionally infirm. *See, e.g., Bliss Excavating Co. v. Luzerne County,* 418 Pa. 446, 211 A.2d 532 (1965); *White v. City of Philadelphia,* 408 Pa. 397, 184 A.2d 266 (1962); *Booz v. Reed,* 398 Pa. 172, 157 A.2d 170 (1960); *Home Life Insurance Co. of America v. Board of Adjustment of Lower Merion Township,* 393 Pa. 447, 143 A.2d 21 (1958); *Dwyer v. Dilworth,*

We, however, are constrained to reject the trial judge's suggestion that section 9712 of the Act is at odds with any of the general purposes set forth in the Crimes Code under section 104. *See* 18 Pa.C.S. § 104.

392 Pa. 123, 139 A.2d 653 (1958); *Rich Coal Co. v. Chesnut,* 355 Pa. 13, 47 A.2d 801 (1946); *Turco Paint & Varnish Co. v. Kalodner,* 320 Pa. 421, 184 A. 37 (1936); *In re Knowles' Estate,* 295 Pa. 571, 145 A. 797 (1929). In the instant case it is not questioned that appellee received actual pre-trial notice of the Commonwealth's intention to seek a mandatory minimum sentence pursuant to the Act. Thus we are presented with no conceivable basis to support a challenge on due process grounds.

■ Moreover, even absent such pre-trial notice appellee's due process claim must fail. A criminal defendant is, of course, entitled to pre-trial notice of each and every element of the offense with which he or she is charged. *See United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980); *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *Commonwealth v. Musto,* 348 Pa. 300, 35 A.2d 307 (1944). However, as we made clear in our decision in *Commonwealth v. Wright,* 508 Pa. 25, 494 A.2d 354 (1985), *aff'd. sub nom. McMillan v. Pennsylvania,* — U.S. —, 106 S.Ct. 2411, 91 L.Ed.2d 67 (U.S.1986), visible possession of a firearm is not an element of the offense charged but rather a factor which becomes relevant only at the sentencing stage, after the defendant has been convicted of the offense charged. Thus, in our view, the post-conviction notice provided for in section 9712(b) meets the requirements of due process by informing the defendant of the Commonwealth's intention to offer evidence of visible possession in a separate sentencing hearing.

■ The trial court's conclusion that section 9712 of the Act creates a classification of offenders violative of the Equal Protection Clause must also be rejected. The right to equal protection of the law under the Fourteenth Amendment guarantees that all persons similarly situated shall be treated alike. *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); *F.S. Royster Guano v.*

*Virginia,* 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920). Where there are distinctions drawn between classifications of persons, they must be reasonably justified. *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 68, 436 A.2d 147, 155 (1981), *app. dismissed sub nom. Bucheit v. Laudenberger,* 456 U.S. 940, 102 S.Ct. 2002, 72 L.Ed.2d 462 (1982); *Adler v. Montefiore Hospital Association of Western Pennsylvania,* 453 Pa. 60, 77, 311 A.2d 634, 643 (1973), *cert. denied,* 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974).

■ When addressing an equal protection challenge, we must initially ascertain the appropriate degree of scrutiny to which the challenged act is to be subjected. Equal protection analysis recognizes three types of governmental classification, each of which calls for a different standard of scrutiny. The appropriate standard of review is determined by examining the nature of the classification and the rights thereby affected. *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974); *Weber v. Aetna Casualty and Surety Co.,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). In the first type of case, where the classification relates to who may exercise a fundamental right or is based on a suspect trait such as race or national origin, strict strutiny is required. *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *San Antonio School District v. Rodriquez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). When strict scrutiny is employed, a classification will be invalid unless it is found to be necessary to the achievement of a compelling state interest. *San Antonio School District v. Rodriquez, supra; Eisenstadt v. Baird, supra; Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *Koremat-*

*su v. United States,* 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944).

■ The second type of case involves a classification which, although not suspect, is either sensitive or important but not fundamental. *Fischer v. Department of Public Welfare,* 509 Pa. 293, 502 A.2d 114 (1985); *James v. Southeastern Pennsylvania Transportation Authority,* 505 Pa. 137, 477 A.2d 1032 (1984); *see generally Rostker v. Goldberg,* 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981); *Orr v. Orr,* 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979); *Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978); *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Reed v. Reed, supra.* Such a classification must serve an important governmental interest and be substantially related to the achievement of that objective. *Pickett v. Brown,* 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983); *Craig v. Boren, supra; Reed v. Reed, supra; Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); *James v. Southeastern Pennsylvania Transportation Authority, supra.*

■ The third type of situation involves classifications which are neither suspect nor sensitive or rights which are neither fundamental nor important. Such classifications will be valid as long as they are rationally related to a legitimate governmental interest. *E.g., Hodel v. Indiana,* 452 U.S. 314, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981); *Schweiker v. Wilson,* 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981); *Foley v. Connelie,* 435 U.S. 291, 98 S.Ct. 1067, 55 L.Ed.2d 287 (1978); *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977).

■ Finding that the Act impinged upon a fundamental liberty interest, the trial court applied the strict scrutiny standard and concluded that the Act created an impermissible distinction in sentencing treatment between convicted felons who committed a crime with a firearm and those who employed other deadly weapons. As we perceive the effect

of section 9712, the trial court's threshold determination that the strict scrutiny test must be applied was error.

In *Commonwealth v. Wright, supra,* this Court rejected the argument that the mandatory sentencing provisions of the Act implicated a fundamental liberty interest:

> Unlike cases in which a fundamental liberty interest is at stake, *e.g., Santosky v. Kramer, supra* [455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)] (involuntary termination of parental rights); *Addington v. Texas, supr* [441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)] (involuntary commitment to mental institution); *Woodby v. I.N.S.,* 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) (deportation); *Chaunt v. United States,* 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960) (loss of citizenship), here the defendant's fundamental right, i.e., freedom from confinement, has already been forfeited. The determination to be made will at most have bearing on the duration of confinement, a question which has traditionally been committed to the discretion of the sentencing court. The fact that the finding of a discreet fact has been made crucial to the determination of the minimum sentence the defendant must serve does not magnify the stature of his individual interest. As we have indicated, the defendant has no right to avoid punishment and no right to a particular punishment within the pertinent statutory range.

*Id.* 508 Pa. at 41–42, 494 A.2d at 362.

The trial court's application of the stringent strict scrutiny standard was therefore inappropriate. The proper mode of analysis is to determine whether the classification created by the Act bears a rational relationship to a legitimate legislative objective.

■ The state interests sought to be advanced by the Act are clearly identified in *Commonwealth v. Wright, supra:*

> The Commonwealth seeks to protect the public from armed criminals and to deter violent crime and the illegal

use of firearms generally, as well as to vindicate its interest in punishing those who commit serious crimes with guns.

*Id.*, 508 Pa. at 41, 494 A.2d at 362.

*See also id.* at 364 (Larsen, J. concurring). Clearly the legislature's mandatory sentencing scheme is rationally related to those objectives. Moreover, the legislative purpose of the Act is unquestionably legitimate. The legislature has broad discretion to exercise its police powers to preserve public safety, *Commonwealth v. Mikulan*, 504 Pa. 244, 470 A.2d 1339 (1983), and it is the province of the legislature to determine the punishment imposable for criminal conduct. *Commonwealth v. Wright, supra; Commonwealth v. Glover*, 397 Pa. 543, 156 A.2d 114 (1959). The equal protection challenge is therefore without merit.[6]

We next address the trial court's conclusion that section 9712 violates the doctrine of the separation of powers. That court reasoned that the Act unconstitutionally infringed upon the sentencing prerogative of the judiciary by requiring the imposition of a minimum sentence. The trial court also held that the Act impermissibly delegated legislative power to the executive by giving the prosecution discretion whether to invoke the procedures of the Act. Both theories were explicitly rejected in *Commonwealth v. Wright, supra.* The first argument fell because, as noted above, it is the province of the legislature to prescribe the punishment for crimes. *Id.* 508 Pa. at 38, 494 A.2d at 361. The delegation argument was found to be similarly meritless:

We perceive no distinction between such an exercise of discretion and the prosecutorial discretion exercised at

**6.** The trial court also held that section 9712 violated due process and equal protection by restricting appellate review in mandatory minimum sentencing cases. That assertion is specious. Section 9712 in no way limits the defendant's right to appellate review of a judgment of sentence, as is evidenced by the fact that an appeal filed by appellee is pending in the Superior Court at No. 581 Philadelphia, 1984. Moreover, as our decision in *Commonwealth v. Wright* and the instant case demonstrate, challenges to the validity of the Act are cognizable in an appeal pursuant to section 9712(d).

any other stage of the criminal prosecution. The decision to accord the Commonwealth a measure of discretion as to whether to employ section 9712 in a given case was a proper exercise of legislative judgment.

*Id.*, 508 Pa. at 40 n. 4, 494 A.2d at 361 n. 4.

We have been presented with no basis in the instant case for reconsidering the views expressed in *Wright* and therefore hold that the Act does not offend the separation of powers principle.

■ In addition to the foregoing constitutional grounds, the trial court also concluded that in the instant case a mandatory sentence imposed pursuant to section 9712 would amount to cruel and unusual punishment. This notion is not based, however, upon a determination that a mandatory five-year sentence for the crime of voluntary manslaughter is *per se* unfair or excessive where it is shown that the homicide was committed with a firearm. The maximum sentence imposable for that offense is ten years imprisonment. *See* 18 Pa.C.S. §§ 1103, 2503(c). In fact, an examination of the trial court's reasons for concluding that a five-year sentence would be "disproportionate," namely, appellee's lack of a prior criminal record, her gainful employment and the fact that the killing was committed in the mistaken belief that her life was in danger, reveal that this constitutional theory is in reality merely a restatement of the trial court's grounds for concluding that the legislature did not intend section 9712 to apply to persons in appellee's circumstances, but only to hard-core recidivists. That argument has already been rejected by this Court. We find the considerations upon which our conclusion that the Act does apply to appellee to be more than adequate to dispose of any contention that such a sentence is manifestly excessive or shocking to community values in light of appellee's conduct and background.

Accordingly, for all of the foregoing reasons, the Order of the Court of Common Pleas is reversed and the matter is remanded for resentencing.

HUTCHINSON, J., files a concurring opinion.

PAPADAKOS, J., concurs in the result.

HUTCHINSON, Justice, concurring.

I concur in the result. I have no quarrel with the majority's holding that Section 9712 of the Mandatory Minimum Sentencing Act, 42 Pa.C.S. § 9712, applies generally to the crime of voluntary manslaughter and specifically to the type of voluntary manslaughter defined in Section 2503(a) of the Crimes Code, 18 Pa.C.S. 2503(a). On the constitutional issue, I would simply affirm on the basis of *Commonwealth v. Wright,* 508 Pa. 25, 494 A.2d 354, *aff'd. sub. nom. McMillan v. Pennsylvania,* — U.S. —, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1985).

In addition, for the reasons set forth in my concurring opinion in *Commonwealth of Pennsylvania v. Parker White Metal Co.,* 512 Pa. 74, 515 A.2d 1358 (1986), I wish to note my belief that the dictum discussing a three-tiered equal protection analysis is neither necessary nor appropriate.