# Commonwealth v. Berrien

C.P. of Dauphin County, no. 1013 CD 1996.

*Francis T. Chardo, senior deputy district attorney,* for the Commonwealth.
*James M. Zugay, chief deputy public defender,* for defendant.

LEWIS, *J.,* June 20, 1997—This opinion is written pursuant to Rule 1925 of the Pennsylvania Rules of Appellate Procedure to address certain arguments with respect to trial issues as well as sentencing under the "Three Strikes" law (42 Pa.C.S. §9714). These issues were not previously discussed in this court's memorandum opinion dated October 1, 1996 disposing of pretrial motions.

On March 29, 1996 at approximately 5:30 a.m., a homeowner on Redstone Drive in West Hanover Township, Dauphin County, reported a burglary to the Pennsylvania State Police. Following a confrontation and scuffle which occurred between a guest in the home and the burglar, the intruder fled through a rear door of the residence dropping the purse of the homeowner he acquired while inside. The intruder was described as 5 foot 6 inches tall, approximately 170 pounds, a stocky build, dressed in dark clothes and wearing a ski mask.

The residence on Redstone Drive is in a rural area of Dauphin County. There is an extensive wooded area behind the home and only four or five houses in the vicinity. Arriving troopers took a quick description of the intruder and then began searching the area.

Approximately one-half mile behind the home on Redstone Drive, State Police Troopers Dissinger and

Tucker observed a vehicle parked under a pavilion on private property. The pavilion was next to a warehouse situated behind the Redstone Drive residence on the other side of a wooded area. Testimony revealed that there are few houses in the area and traffic is normally light, especially at that time of morning. The vehicle stood out because it was under a picnic pavilion, an unlikely location. Further, when the troopers first spotted the car, it was leaving the pavilion area without headlights while still dark.

The troopers approached the car, encountered the defendant and inquired, "What are you doing?" The defendant indicated that he was resting and that he had just come off the interstate. Interstate Route 81 is approximately 1 1/2 to 2 miles from the site where the defendant's car was stopped. Further, this court took judicial notice of the fact that there are a variety of gas stations, hotels, motels and convenience stores, more appropriate to be utilized as a "rest" location and much more conveniently located to the interstate than this isolated pavilion.

The police noted that the defendant matched the description of the intruder. In addition, the police also noticed that the defendant's clothing was dry, in spite of a freezing rain. The police further noted that the defendant was nervous. The troopers asked for consent to search the vehicle and defendant initially declined. After a short discussion with the police, the defendant consented to have his vehicle searched. During this time, the police uncovered a variety of wet clothing, including gloves, a black ski mask and boots. All of these items were wet. When asked about the wet clothing, the defendant replied that he had been playing football in the rain the day before. Defendant was subsequently arrested and taken to state police headquarters.

A suppression hearing was held before this court on July 31, 1996. Defendant made the following arguments:

(1) That the troopers made a pretextual stop in order to find reasonable suspicion.

(2) That the defendant was improperly detained without reasonable suspicion after the traffic stop was complete.

(3) That the defendant did not give a knowing, intelligent and voluntary consent to search.

(4) That a warrant should have been obtained before the search was conducted.

On October 1, 1996 a memorandum opinion was filed by this court setting forth the reasons for the denial of defendant Berrien's motion to suppress. This court incorporates the reasoning of that memorandum for application to defendant's present appellate arguments.

Further, immediately prior to trial, defendant raised for the first time a motion to suppress his confession based on voluntariness. A second suppression hearing was then held in order to determine whether the statement defendant Berrien made to police regarding the incident was improperly induced and whether such statement was involuntary. After testimony was taken on that issue, this court found the issue waived as it was not timely filed pursuant to Pa.R.Crim.P. 323. In addition, this court denied defendant's motion to suppress the statement on the merits. The testimony revealed that the conduct of the trooper conducting the interview of defendant Berrien was proper and did not violate any of defendant's rights. The statement was made voluntarily and intelligently and there was no evidence that any threats or promises were made to the defendant

to compel him to make the statement admitting to his involvement in the crime.

Following a jury trial which took place on November 20-21, 1997, defendant Raphel Berrien was found guilty of burglary. Sentencing was deferred for a determination of the application of 42 Pa.C.S. §9714, relating to sentences for second or subsequent offenders and commonly referred to as a "Three Strikes" sentence. Evidence presented at sentencing indicated that the defendant had been convicted and sentenced for at least two crimes of violence as defined in subsection G of the Act. In particular, defendant Berrien was convicted of two burglaries involving structures adapted for overnight accommodations in which at the time of the offense someone was present. On January 21, 1997 and pursuant to 42 Pa.C.S. §9714, defendant Berrien was sentenced to pay the cost of prosecution, a fine of $5,000 and incarceration for a mandatory minimum term of imprisonment in a state correctional institution of 25 to 50 years.

Defendant Berrien is presently appealing his conviction and sentence. The primary issue defendant is raising on appeal deals with the constitutional aspects of the mandatory sentence as provided for in the "Three Strikes" legislation. Other points raised deal with suppression and trial procedure issues. As discussed earlier, this court incorporates the reasoning as set forth in the October 1, 1996 memorandum opinion regarding the stop and search suppression issues. In addition, the reasoning for this court's denial of defendant's suppression motion regarding his statement is set forth above. This court will now address the remaining procedural issues, followed by a discussion of the constitutionality of defendant Berrien's mandatory sentence.

Defendant argues that this court erred in denying his *Batson* challenge to the Commonwealth's exclusion of African-Americans from the jury panel. During jury

selection, appellant established a prima facie case of discrimination as required by *Commonwealth v. Smulsky*, 415 Pa. Super. 461, 609 A.2d 843 (1992). It is then that the burden shifts to the prosecutor to supply legitimate race-neutral reasons for striking potential jurors. *Commonwealth v. Wheeler*, 435 Pa. Super. 266, 645 A.2d 853 (1994). The question for this court is the prosecutor's credibility. See *Commonwealth v. Twilley*, 417 Pa. Super. 511, 612 A.2d 1056 (1992).

The Commonwealth exercised its first strike against juror no. 75. The prosecutor explained that she had a bitter look on her face and looked angry to be there. (N.T. at 13.) Both the prosecutor and the investigating officer noticed angry looks from the potential juror which were claimed to be directed at the prosecution table. This court finds that the prosecutor reasonably inferred that juror no. 75 would be an unwilling juror and therefore properly exercised a peremptory challenge.

Next, the prosecutor struck juror no. 24. He explained that one of the reasons he struck the juror is that throughout much of the voir dire, he was asleep. (N.T. at 13.) In addition, the prosecutor explained that the other reason juror no. 24 was struck was because he worked for Good Will Industries. The prosecutor believed that someone in that position would be more liberal and more likely to side with the defendant, particularly an indigent one. (N.T. at 13.)

This court remembers that particular juror. He was indeed asleep during the entire voir dire. This court noted on the record that he was not just "nodding off." In reality, several jurors had to wake him toward the end of jury selection. The fact that he was sleeping was very clear and quite obvious to this court. (N.T. at 13-14.)

As to the Commonwealth's strike of juror no. 236, the prosecutor noted that he was also asleep during some of the voir dire. (N.T. at 14.) However, the principal

reason given as to why this juror was struck was based on the recommendation of the potential juror's cousin, who at the time worked in the Dauphin County District Attorney's office. (N.T. at 15.) The cousin recommended against choosing juror no. 236 due to the fact he works with young people and might be overly sympathetic to a youthful defendant. (N.T. at 15.) This court finds that the reasons provided by the prosecutor for dismissing the jurors were race-neutral. The prosecutor was credible and his explanations were without pretext.

Defendant Berrien next argues that this court erred in permitting certain physical evidence to go out with the jury for deliberation purposes. He contends that evidence was not properly marked, introduced or admitted into evidence. The record reflects that during trial, the Commonwealth introduced and admitted into evidence six exhibits. They included: exhibit no. 1, a lady's purse; exhibit no. 2, a ski mask; exhibit no. 3, a box containing articles of clothing and other items found in defendant Berrien's car; exhibit no. 4, the defendant's statement; exhibit no. 5, the defendant's waiver of rights form; and exhibit no. 6, a certified copy of the defendant's record from Hunterdon County. Of main concern to the defendant is Commonwealth's exhibit no. 3. Defendant argues that a pair of sweatpants and possibly a hooded sweatshirt were not shown to the jury nor referred to in the testimony. (N.T. at 99.) He argues that even though the items were contained in a box admitted into evidence, it does not necessarily follow that the items should be permitted to go out with a jury during deliberations. (*Id.*)

This court finds that Commonwealth's exhibit no. 3 was properly introduced and admitted into evidence. The articles of clothing contained therein were pieces of physical evidence appropriately sent with the jury to be examined during its deliberation process. On pages

12-13 of the trial transcript, the articles from the box marked were for the most part described by the state police trooper who retrieved them from defendant's car on the night that he was stopped and his car was searched. The contents referred to include: a knapsack, which contained wet clothing; boots; a hooded sweatshirt; a flashlight and white gloves. All of the clothing described by the trooper was wet when found. (N.T. at 14.) Although not discussed by the trooper, there was some confusion as to whether the sweatpants were actually held up and viewed by the jury. (N.T. at 99.) However, when considering all of the evidence from the box as a whole, this court finds that that particular item of clothing was properly sent out with the jury for purposes of deliberation. As to the hooded sweatshirt, this court finds that that item was described by the trooper and viewed by the jury at trial. (N.T. at 13.)

Finally, defendant argues that this court erred in denying his motion to quash the mandatory sentence on five constitutional grounds. Each argument with regard to the mandated sentence of 42 Pa.C.S. §9714 is addressed below. This court notes that although defendant Berrien filed a statement of matters complained of on appeal which generally outlines his appellate arguments, a brief explaining his contentions was not filed.

## CRUEL AND UNUSUAL PUNISHMENT

To begin, defendant Berrien argues that the sentence imposed constitutes cruel and unusual punishment under the federal and Pennsylvania Constitutions. The Pennsylvania Constitution provides no greater protection against cruel and unusual punishment than that contained in the Eighth Amendment to the United States Constitution. *Commonwealth v. Spells*, 417 Pa. Super. 233, 612 A.2d 458 (1992), *appeal denied*, 537 Pa. 350, 643 A.2d 1078 (1994). Under both constitutions, a sen-

tence must be proportionate to the crime for which the defendant has been convicted. *Solem v. Helm.* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). However, a reviewing court "should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, . . . ." *Id.,* 103 S.Ct. at 3009.

In analyzing proportionality under the Eighth Amendment, the reviewing court should consider (i) the gravity of the offense and the harshness of the penalty; (ii) the sentence imposed on other criminals in the same jurisdiction; and (iii) the sentence imposed for the commission of the same crime in other jurisdictions. *Id.,* 103 S.Ct. at 3011. In the case at bar, the offense is grave and the penalty is not disproportionately harsh.

Consideration of the nature of the defendant's predicate offenses is appropriate. *Id.,* 103 S.Ct. at 3013. Defendant Berrien had been previously convicted of four burglaries in New Jersey. At least two of these burglaries involved residences where a person was present in the residence at the time of the burglary. Each of these crimes is serious in nature. The potential for violence or death in an invasion of a citizen's home is far greater than that of a simple theft. For that reason, our legislature has graded residential burglaries as felonies of the first degree, the highest grade of offense other than that for certain categories of murder.

In addition to the potential for violence, whether or not the present offense involved actual violence is an important consideration in determining proportionality. "[N]onviolent crimes are less serious than crimes marked by violence or the threat of violence." *Id.,* 103 S.Ct. at 3011. Presently, this case involved actual violence to an occupant of the residence. Upon being confronted, the defendant struggled with a tenant in the

home. The defendant fought with the victim and pushed him up against a wall before escaping. (N.T. at 25-26.)

Accordingly, this court finds that disproportionality does not exist in the case at bar. Defendant Berrien was convicted of the burglary of an occupied residence. Such an offense is a felony of the first degree and ordinarily carries a maximum sentence of 20 years incarceration. Further, the defendant has proven himself to be a career criminal, having committed the same felony at least two times prior. Finally, considering the potential for violence in the commission of such a felony and the actual violence perpetrated in the present case, the punishment for recidivists like defendant Berrien as passed by the legislature in 42 Pa.C.S. §9714 is neither cruel nor unusual.

## DUE PROCESS

Defendant vaguely contends that the mandatory sentence was imposed in violation of his state and federal due process rights without pointing to any offending procedure or omission of process. He does not claim lack of notice of any specific defect in the proceedings. A review of the record reveals no such due process violation.

As required by 42 Pa.C.S. §9714(d), defendant Berrien was put on notice of the Commonwealth's intention to seek the mandatory sentence at least three and one-half months prior to the trial as indicated by defense counsel at the first suppression hearing. (Suppression N.T. at 41.) Further, defense counsel was furnished with copies of the records of defendant's previous convictions as required by the statute. (Sentencing N.T. at 2-3.) In fact, defense counsel conceded that the defendant had been convicted of at least two burglaries of residences where persons were present. (Sentencing N.T. at 5.) A hearing was conducted to determine the

applicability of the statute with regard to sentencing. The procedures provided for by 42 Pa.C.S. §9714 were carefully observed and defendant's rights were strictly safeguarded.

## EX POST FACTO

Next, defendant Berrien claims that 42 Pa.C.S. §9714 constitutes an ex post facto law, rendering the statute unconstitutional. There is a strong presumption of the constitutionality of statutes. *Commonwealth v. Mikulan*, 504 Pa. 244, 470 A.2d 1339 (1983). The challenger of the constitutionality of a statute bears a heavy burden of showing that the statute clearly and plainly violates the constitution. *Id.* The legislature creates an ex post facto law only where one of the following occurs:

"(1) The law makes an act criminal which was not criminal when done;

"(2) The law aggravates a crime[—]one which makes it greater than it was when committed;

"(3) The law changes a punishment, and makes it greater than it was when a punishable act was committed;

"(4) The law alters the rules of evidence and requires less or different testimony than the law required at the time the offense was committed in order to be convicted." *Commonwealth v. Grady*, 337 Pa. Super. 174, 177, 486 A.2d 962, 964 (1984). The legislature passed and made effective 42 Pa.C.S. §9714 prior to the commission of the present burglary for which defendant was sentenced. The change in penalty for a burglary committed by a recidivist was prospective. The mere fact that the prospective application relied upon circumstances which existed prior the effective date of the sentencing does not render it an ex post facto law. See *Grady, supra.*

EQUAL PROTECTION

Defendant Berrien next contends that section 9714 violates the equal protection clause of the federal and Pennsylvania Constitutions. The equal protection clause requires that all persons similarly situated be treated alike. Where distinctions between classifications are created, they must be reasonably justified. *Commonwealth v. Bell*, 512 Pa. 334, 516 A.2d 1172 (1986). In evaluating an equal protection claim, one must initially determine if the legislature has created a classification for the unequal imposition of burdens. *Commonwealth v. Norris*, 346 Pa. Super. 351, 499 A.2d 644 (1985).

Clearly, the legislature has created a classification which treats habitual criminals differently than others. A determination must then be made as to what standard should be applied in analyzing that classification. In a situation involving neither suspect nor sensitive classifications nor fundamental nor important rights, the rational basis test applies. *Commonwealth v. Bell, supra* at 345, 516 A.2d at 1178. Consequently, the rational basis test applies to the present case. Career criminals are not a suspect or sensitive classification requiring strict or intermediate scrutiny. Because the issue of the defendant's liberty has already been decided upon his conviction, a fundamental liberty interest is not involved. *Id.* Therefore, strict scrutiny is not required.

The legislature certainly has a legitimate interest in the lengthy incarceration of career criminals, especially violent ones. States have "the interest, expressed in all recidivist statutes, in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society established by its criminal law." *Rum-*

540

*mel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 1140, 63 L.Ed.2d 382 (1980). Section 9714 is rationally related to that interest.

## SEPARATION OF POWERS

Finally, defendant Berrien contends that section 9714 is unconstitutional because it violates the separation of powers doctrine. "It is the province of the legislature to determine the punishment imposable for criminal conduct." *Commonwealth v. Wright* 508 Pa. 25, 40, 494 A.2d 354, 361 (1985). Where the legislature has seen fit to deny the judiciary the discretion in sentencing of certain types of offenders, there is no violation of the doctrine of separation of powers. *Commonwealth v. Wolfe,* 349 Pa. Super. 415, 503 A.2d 435 (1986).