## Commonwealth v. Perez

C.P. of Berks County, no. CP-06-CR-2456-2008.

*Adrian Shchuka,* for Commonwealth.
*Kevin Beals* and *Sean Fitzgerald,* for defendant.

LUDGATE, *J.,* November 18, 2008—This matter is before this court on the defendant's omnibus pretrial motion in which the defendant raises habeas corpus as to Count 2, murder of the first degree of Kayla Diaz-Santiago, a motion to declare the death penalty unconstitutional and a motion to quash aggravating factors. Defendant Albert Perez' omnibus pretrial motion shall be decided based on the pretrial hearing held before this court on September 19, 2008.

## 1. FACTUAL HISTORY OF THE CASE

Albert Perez (defendant) and Duceliz Diaz-Santiago were boyfriend and girlfriend and resided at the Shillington home of Haydee Santiago, Duceliz Diaz-Santiago's mother, from November 2004 to June of 2005. (N.T. pretrial hearing 9/19/2008 pp. 31-33.) Haydee Santiago testified that the defendant would "mistreat" Kayla Diaz-Santiago, Duceliz Diaz-Santiago's daughter, including "grab[ing] [her] by the ear." (N.T. pretrial hearing 9/19/2008 pp. 33-34.) Santiago further testified that the defendant told her daughter that they had to move out of Santiago's home after Santiago began to call the defendant's attention to the mistreatment. *Id.*

Haydee Santiago last saw her daughter alive on January 14 of 2007. (N.T. pretrial hearing 9/19/2008 p. 35.)

Haydee Santiago testified that on that day, Duceliz Diaz-Santiago's home was well organized and "looking really nice" and that Duceliz Diaz-Santiago was the happiest she had ever seen her because her job had become permanent. (N.T. pretrial hearing 9/19/2008 p. 35.) The previous day, January 13, 2007, Diaz-Santiago told her mother that the defendant had asked "if she wanted to go leave with him outside of the state." (N.T. pretrial hearing 9/19/2008 p. 36.) Diaz-Santiago planned to meet the defendant and said the defendant had a surprise for Diaz-Santiago and Kayla. (N.T. pretrial hearing 9/19/2008 pp. 36-37.)

Duceliz Diaz-Santiago and Kayla Diaz-Santiago were found dead on January 15, 2007, at 404 Main Street, Bernville, Berks County, Pennsylvania. (N.T. pretrial hearing 9/19/2008 pp. 35, 40.) Duceliz Diaz-Santiago's body was found with a ligature around the neck which was not looped or tied in any way. (N.T. pretrial hearing 9/19/2008 p. 42.) Kayla Diaz-Santiago's body was found hanging from a bathroom towel rod by use of a pair of pajama bottoms tied into a complex knot. (See Commonwealth exhibits 4 p. 6, 3 p. 4.)

An alleged suicide note was found on a computer located in the living room of the apartment. (N.T. pretrial hearing 9/19/2008 p. 43.) The note read exactly as follows; all mistakes are contained in the original text of the note:

*"I'm doing something today thast will affe4ct us all, I want uou to do me a favor, get jajaira and eddie and all 4 of their kids, he raped me when i went to their hous e and she watched, so i want you to kill thenm, ill be*

*watchin to make sure you do this, leave albert alone though just tell albert i love him and this ist his fault, and its not the familys faut eithe, i just deont weant to live anymore, mommy and poppi i liove you, mio i love you Carlos i love you and Brenda i love you, please tell albert i will always love him . . . . i sorry it has to be this way everyone, but this is what iv wanted to do for a very long tmie, peace3 out and i'll be keeping an eye on all of you, and even though we argued and fight over stupid things, you guys are always gonna bwe in my heart,"* (Commonwealth exhibit 5, N.T. pretrial hearing 9/19/2008 p. 44.)

Corporal Moyer testified that "jajaira" is the defendant's ex-wife, "eddie" is Jajaira's current boyfriend and the defendant fathered four children with Jajaira. (N.T. pretrial hearing 9/19/2008 p. 44.) The alleged suicide note was submitted to the Behavioral Sciences Unit of the Federal Bureau of Investigation (FBI). (N.T. pretrial hearing 9/19/2008 p. 45.) Analysis of the note by the FBI Behavioral Sciences Unit determined it "highly likely" that the defendant authored the notes and "highly likely" that Diaz-Santiago did not author the note. *Id.*

Two days after the discovery of victim's bodies, police first spoke with the defendant at his place of employment. (N.T. pretrial hearing 9/19/2008 pp. 45-46.) In his *first* statement to police, the defendant stated that he and Diaz-Santiago were in a relationship for about two years, but he had not seen her in approximately two months. (N.T. pretrial hearing 9/19/2008 p. 46.) The defendant stated that he was not the biological father of Kayla Diaz-Santiago but had signed paperwork for her custody and was paying child support to her mother. (N.T. pre-

trial hearing 9/19/2008 p. 47.) The defendant stated that on the morning of January 15, 2007, he was living with his girlfriend, Melanie Ledbetter, at her residence in Wyomissing, Berks County, Pennsylvania. *Id.* On that day, the defendant claimed "he got up, took (Melanie Ledbetter) to work in the morning, and returned back home and went to bed." *Id.* The defendant then admitted that he saw Duceliz at her workplace the Friday before the homicide, that they had sexual relations inside his car and that he told her he had a new girlfriend and that this would be the last time he would see her. (N.T. pretrial hearing 9/19/2008 p. 48.) The defendant continued to deny that he was at Diaz-Santiago's residence in Bernville on January 15, 2007. *Id.*

Diaz-Santiago's computer was taken into evidence by authorities and a search warrant was served on America Online for any data in their possession. (N.T. pretrial hearing 9/19/2008 pp. 48-49.) Diaz-Santiago used the e-mail address of Alandliz04@aol.com. (N.T. pretrial hearing 9/19/2008 p. 49.) E-mails obtained pursuant to the search warrant revealed that the defendant and Diaz-Santiago continued to have an ongoing relationship despite the defendant's residing with another woman. *Id.* One e-mail from the defendant to Diaz-Santiago sent on August 15, 2006 reads "She aint my kid. Take me off support." (See Commonwealth exhibit 6 p. 6; N.T. pretrial hearing 9/19/2008 p. 51.) Another e-mail from Diaz-Santiago to the defendant sent January 4, 2007 states "she has a huge surprise." (See Commonwealth exhibit 6 p. 2; N.T. pretrial hearing 9/19/2008 p. 52.) The defendant also filed a petition for modification of an existing support order on August 11, 2006, in the Berks County

Court of Common Pleas, in which the defendant sought to terminate child support on grounds of substantially changed circumstance, claiming "Kayla is not my daughter." (See Commonwealth exhibit 7; N.T. pretrial hearing 9/19/2008 pp. 52-53.) The petition was denied on September 28, 2006. (See Commonwealth exhibit 7 p. 2.)

A search warrant was executed on the defendant's residence, that being his girlfriend's home located at 1537 Singer Road, Wyomissing, Berks County, Pennsylvania. (N.T. pretrial hearing 9/19/2008 p. 53.) This search recovered a Sony Playstation 2 video game console which was identified as belonging to Diaz-Santiago. *Id.* Several individuals had seen the Playstation 2 in Diaz-Santiago's apartment. (N.T. pretrial hearing 9/19/2008 p. 54.) Also, upon discovery of the victims' bodies, a cabinet in Diaz-Santiago's apartment was found to be dusty, except for one spot as though something had recently sat there. *Id.*

Police questioned the defendant again on January 19, 2007. (N.T. pretrial hearing 9/19/2008 p. 54.) In his *second* statement to police, the defendant again denied being at Diaz-Santiago's apartment on the day of the homicide and denied possession of the Playstation 2. (N.T. pretrial hearing 9/19/2008 pp. 54-55.)

The defendant gave a *third* statement to police on January 24, 2007, in which he admitted to being at Diaz-Santiago's apartment the day of the homicide but denied having sexual relations with her on January 15, 2007. (N.T. pretrial hearing 9/19/2008 pp. 55-56.) However, a lab report prepared by the Bethlehem DNA laboratory in Bethlehem, Pennsylvania found "[t]he DNA profile

obtained from the blood sample of Albert Perez . . . matches the DNA profile obtained from sperm fractions from the crotch panel of Duceliz Diaz-Santiago's black underwear . . . and the swabs collected from Duceliz Diaz-Santiago[]." (See Commonwealth exhibit 8 p. 5; N.T. pretrial hearing 9/19/2008 pp. 56-57.)

On April 18, 2007, a search warrant was executed on the defendant's body; blood and hair samples were seized. (N.T. pretrial hearing 9/19/2008 p. 58.) On that day, the defendant also gave a *fourth* statement to police in which he admitted he and Diaz-Santiago had sexual relations on the day of the homicide. *Id.*

Upon his arrest on May 1, 2007, the defendant gave his *fifth* statement to police,[1] in which he admitted to killing Duceliz Diaz-Santiago, but blamed Duceliz Diaz-Santiago for the death of Kayla Diaz-Santiago. (N.T. pretrial hearing 9/19/2008 p. 59.) The defendant stated "I started screaming at Liz as to why she [killed Kayla] and laid Kayla back down. At that point she started screaming repeatedly." (N.T. pretrial hearing 9/19/2008 pp. 60-61.) However, Corporal Moyer testified that neighbors in the area were canvassed and the only screaming heard by anyone was that of children playing in a shower. (N.T. pretrial hearing 9/19/2008 pp. 61-62.)

---

1. Although the defendant's omnibus pretrial motion does not raise any claim of violation of his rights under *Miranda v. Arizona,* 384 U.S. 436 (1966), and its progeny, the court wishes to note that the defendant initialed the custodial written statement, acknowledging an affirmative response to each of the questions "Do you understand your rights as I have explained them to you?", "With these rights in mind, do you now wish to make a statement?" and "Can you read and write the English language?". (See Commonwealth exhibit 9. p. 1.)

Regarding the death of Duceliz Diaz-Santiago, the defendant stated that "[a]t that moment I didn't realize how but I picked up the cord that was lying on the floor and then, without knowing how, I ended up behind Liz, strangling her with the cord. After realizing she had passed out and went limp, I dropped her and left the building." (N.T. pretrial hearing 9/19/2008 p. 60.) The defendant then admitted that he staged the crime scene by hanging Kayla's body on the towel rack, attempting to hang Diaz-Santiago's body on the closet coat rack and writing the alleged suicide note. *Id.* After doing so, the defendant stated "[o]n my way home, I called my Mom and had a small conversation with her. I went home, exercised, ate, and took a small nap. I then went to Mel's job to get her lunch. After getting her lunch and spending about a half hour with her, I went back to Liz' apartment. When I got there, I saw that the roads were shut down and the police were there, so I turned around and came back home." (N.T. pretrial hearing 9/19/2008 p. 61.)

Pathologist Dr. Richard Bindie conducted autopsies of Duceliz Diaz-Santiago and Kayla Diaz-Santiago. (See Commonwealth exhibits 1 and 2; N.T. pretrial hearing 9/19/2008 p. 22.) Regarding Duceliz Diaz-Santiago, Dr. Bindie concluded the cause of death to be "compressive neck injury or trauma with features of ligature strangulation." (N.T. pretrial hearing 9/19/2008 pp. 22-23.) Ligature strangulation, Dr. Bindie explained, is categorized as a type of asphyxiation in which blood vessels to the brain and the windpipe are compressed which could cause death within a few minutes, usually not exceeding eight minutes. (N.T. pretrial hearing 9/19/2008 p. 23.) Dr. Bindie also stated that unconsciousness but not death

could occur during ligature strangulation within "half a minute up to a minute or two." (N.T. pretrial hearing 9/19/2008 p. 24.) Dr. Bindie concluded that it would be "almost impossible" for a person to hang oneself without having a ligature looped, tied or wrapped around one's neck. (N.T. pretrial hearing 9/19/2008 p. 25.) Dr. Bindie concluded that Duceliz Diaz-Santiago's manner of death was homicide. (N.T. pretrial hearing 9/19/2008 p. 26.)

Regarding Kayla Diaz-Santiago, Dr. Bindie concluded the cause of death to be "compressive neck injury or trauma with features of ligature strangulation and suspension or hanging." (N.T. pretrial hearing 9/19/2008 p. 26.) Kayla Diaz-Santiago's body was found with a complex knot ligature around the neck, which Dr. Bindie described as very tight and tough to open and unravel. (N.T. pretrial hearing 9/19/2008 p. 27.) The knot could not have become so tight simply by the weight of Kayla's body, Dr. Bindie concluded. *Id.* Dr. Bindie stated that it was possible that Kayla was alive but unconscious at the time the ligature was tied because suffocation generally takes longer than ligature strangulation. (N.T. pretrial hearing 9/19/2008 pp. 27-29, 30.) Kayla's manner of death was homicide. (N.T. pretrial hearing 9/19/2008 p. 29.)

Dr. Isidore Mihalaki, a forensic pathologist, was consulted by Corporal Moyer regarding the manner of death of Duceliz Diaz-Santiago and Kayla Diaz-Santiago. (N.T. pretrial hearing 9/19/2008 p. 62.) Dr. Mihalaki did not testify at the pretrial hearing, but his report was introduced through Corporal Moyer. *Id.* Dr. Mihalaki's report concluded "that the mother's death preceded the daughter's death." (N.T. pretrial hearing 9/19/2008 p. 63.)

## 2. DISCUSSION OF ISSUES PRESENTED IN DEFENDANT'S OMNIBUS PRETRIAL MOTION

The defendant raises the following issues:

(A) Petition for the issuance of a writ of habeas corpus

(B) Motion to declare the death penalty unconstitutional

(C) Motion to quash aggravating factors

(D) Motion to allow for enlargement of penalty phase expert witness(es) at public expense

(E) Motion for change of venue or venire

(F) Motion to reserve the right to file additional pretrial motions

The court will only address issues A, B and C. Issue A will be limited to Count 2, murder of the first degree of Kayla Diaz-Santiago, because the defendant raised habeas corpus only as to that count. (N.T. pretrial hearing 9/19/2008 p. 69.) Issue D has previously been granted. (N.T. pretrial hearing 9/19/2008 p. 6.) Issue E was denied with the possibility of revisiting the issue upon jury selection. *Id.* Issue F was granted under extraordinary circumstances. (N.T. pretrial hearing 9/19/2008 p. 7.)

This matter will be determined based on the evidence and testimony presented at the pretrial hearing held before the court on September 19, 2008, the defendant's brief in support of his omnibus pretrial motion, the Commonwealth's brief in opposition to the motion, and the applicable statutory and case law.

## A. *Petition for the Issuance of a Writ of Habeas Corpus*

The scope of habeas corpus review is to determine whether the Commonwealth has sufficient evidence to establish a prima facie case against the accused on the crimes charged. *Commonwealth v. Packard,* 767 A.2d 1068 (Pa. Super. 2001). In order to establish a prima facie case, the Commonwealth is required to present evidence with regard to each of the material elements of a charge and to establish sufficient probable cause to warrant belief that the accused committed the offenses charged. *Commonwealth v. Santos,* 583 Pa. 96, 876 A.2d 360 (2005); *Commonwealth v. Lutz,* 443 Pa. Super. 262, 661 A.2d 405 (1995). While the Commonwealth is not required to prove guilt beyond a reasonable doubt, the evidence presented to establish a prima facie case should be such that, if presented at trial and accepted as true, the judge would be warranted in allowing the case to go to the jury. *Commonwealth Santos,* 583 Pa. 96, 876 A.2d 360 (2005); *Commonwealth v. Saunders,* 456 Pa. Super. 741, 691 A.2d 946 (1997).

In order to prove a person guilty of murder of the first degree, 18 Pa.C.S. §2505(a), the Commonwealth must prove that the killing was done intentionally. 18 Pa.C.S. §2505(a). "A person acts intentionally with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and (ii) if the element involves attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they

exist." 18 Pa.C.S. §302(b)(1). The Commonwealth may prove any element or all the elements of the crime of homicide by circumstantial evidence. *Commonwealth v. Crawley,* 514 Pa. 539, 551, 526 A.2d 334, 340 (1987). "There is no requirement that a homicide, including murder in the first degree, be proven by eyewitness testimony." *Commonwealth v. Hardcastle,* 519 Pa. 236, 250, 546 A.2d 1101, 1107-1108 (1988), *cert. denied,* 493 U.S. 1093 (1990).

The defendant has been charged with the killing of Kayla Diaz-Santiago. This court finds that the Commonwealth has offered sufficient evidence relating to the charge of murder in the first degree. The evidence before this court is that the defendant would mistreat Kayla Diaz-Santiago. (N.T. pretrial hearing 9/19/2008 pp. 33-34.) The defendant resented paying child support to her mother and had previously sought to terminate his obligation. (See Commonwealth exhibit 6 p. 6; N.T. pretrial hearing 9/19/2008 p. 51; see Commonwealth exhibit 7; N.T. pretrial hearing 9/19/2008 p. 52.) The Commonwealth presented evidence that the defendant arranged to meet with the victims on the day of the homicide and was present at Duceliz Diaz-Santiago's Bernville apartment the day of the homicide. The defendant admitted to killing Duceliz Diaz-Santiago, fabricating the alleged suicide note and staging the scene to look like a murder-suicide perpetrated by Diaz-Santiago. However, the Commonwealth presented evidence that Duceliz Diaz-Santiago did not kill Kayla Diaz-Santiago, namely Dr. Mihalaki's report "that the mother's death preceded the daughter's death." (N.T. pretrial hearing 9/19/2008 p. 63.)

This court finds there is sufficient circumstantial evidence to support the charge of murder in the first degree of Kayla Diaz-Santiago. The defendant's motion for habeas corpus as to murder in the first degree of Kayla Diaz-Santiago is denied.

## B. *Constitutionality of the Death Penalty*

The issue of whether the death penalty is constitutional has been carefully and fully explained by the Pennsylvania Supreme Court in *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1452 (1983), *reh. denied,* 463 U.S. 1236, 104 S.Ct. 1236, 77 L.Ed.2d 1452 (1983). In *Zettlemoyer,* the court held, "[i]t is undisputed that the framers of the United States Constitution did not consider the death penalty to be a per se violation of the prohibition against 'cruel punishments'." *Id.* at 74, 454 A.2d at 967. "Neither did the framers of the Pennsylvania Constitution, Article I, Section 9 enacted simultaneously with Article I, Section 13, [which] provides 'nor can (the accused in a criminal prosecution) be deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land.'" *Id.* at 74, 454 A.2d at 967. "For the foregoing reasons, we hold that the death penalty is not 'cruel punishment' within the proscription of Article I, Section 13 of the Pennsylvania Constitution, and . . . [is] permissible under the constitutions of this state and of the United States." *Id.* at 77, 454 A.2d at 969. See also, *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Additionally, "Pennsylvania's capital cases receive the highest [level of] scrutiny and have more procedural safe-

guards than cases involving other crimes." *Commonwealth v. Cuevas,* 574 Pa. 409, 418, 832 A.2d 388, 393 (2003).

Additionally, the Pennsylvania Supreme Court has upheld the validity of Pennsylvania's death penalty. The courts have ruled that 42 Pa.C.S. §9711(d)(16) is not unconstitutionally vague or overbroad. "It is a fundamental principle of constitutional law that a challenge to a statute may not be raised in the abstract but must find its basis in an injury to the party seeking to have the enactment declared unconstitutionally infirm." *Commonwealth v. Bell,* 512 Pa. 334, 342, 516 A.2d 1172, 1177 (1986). See *Commonwealth v. DeHart,* 512 Pa. 235, 516 A.2d 656 (1986), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987). *Commonwealth v. Bardo,* 551 Pa. 140, 154-55, 709 A.2d 871, 878 (1998). This court has previously addressed and rejected vagueness challenges to various other aggravating circumstances. See *Commonwealth v. Fahy,* 521 Pa. 298, 316, 516 A.2d 689, 698 (1986).

42 Pa.C.S. §9711(d)(11), the aggravating factors that a defendant had previously been convicted of another murder either before or at the time of the charged capital murder does not violate the Eighth Amendment or the Due Process Clause. *Commonwealth v. Fletcher,* 580 Pa. 403, 861 A.2d 898 (2004).

42 Pa.C.S. §9711 is not denial of equal protection of law since the statute creates categories for which the penalty may be imposed and is rationally related to a legitimate state objective. "Absent some showing that prosecutorial discretion is being abused in the selection

of cases in which the death penalty will be sought, there is no basis for appellant's assertions [that the statute violates the Eighth Amendment]." *Commonwealth v. DeHart,* 512 Pa. 235, 516 A.2d 656 (1986), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987). "The same rationale can be applied to appellant's unsupported equal protection challenge. Therefore, absent some actual showing of prosecutorial abuse of discretion, appellant's argument is without merit." *Commonwealth v. Hardcastle,* 512 Pa. 236, 258, 546 A.2d 1101, 1111 (1988). (footnote omitted) See also, *Commonwealth v. Tilley,* 528 Pa. 125, 595 A.2d 575 (1991).

42 Pa.C.S. §9711 does not violate the Separation of Powers Doctrine. "It is the province of the legislature to determine the punishment imposable for criminal conduct." (footnote omitted) *Commonwealth v. Wright,* 508 Pa. 25, 40, 494 A.2d 354, 361 (1985), *aff'd sub nom., McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). "We perceive no difference between the mandatory nature of the death penalty and other mandatory sentencing, which is constitutional with respect to the doctrine of separation of powers and procedural due process." *Commonwealth v. Moore,* 534 Pa. 527, 549, 633 A.2d 1119, 1130 (1993). See also, *Commonwealth v. Nenninger,* 359 Pa. Super. 444, 519 A.2d 433 (1986).

The defendant contends that the method of execution employed by this Commonwealth, being lethal injection, constitutes cruel and unusual punishment. However, this issue was addressed very recently by the United States Supreme Court. Lethal injection by three drug protocol (sodium thiopental, pancuronium bromide and potassium

chloride) does not violate the Eighth Amendment's prohibition upon cruel and unusual punishment. *Baze v. Rees,* 128 S.Ct. 1520 (2008). "[T]he rights . . . against 'cruel punishments' [Article I, Section 13 of the Pennsylvania Constitution] are co-extensive with those secured by the Eighth and Fourteenth Amendments [of the United States Constitution]." *Zettlemoyer,* 500 Pa. at 73-74, 454 A.2d at 967.

The Commonwealth has not made public the actual combination of drugs used to conduct a lethal injection but statute requires use of "an ultrashort-acting barbiturate in combination with chemical paralytic agents." 61 P.S. §3004(a). The Supreme Court of the United States has never invalidated a state's chosen procedure for carrying out a sentence of death on grounds of cruel and unusual punishment. *Baze,* 128 S.Ct. at 1530.

### C. *Motion to Quash Aggravating Factors*

Because habeas corpus has been denied as to Count 2, this motion is withdrawn as per defense counsel's motion and the court need not address it.