612 A.2d 1056

**COMMONWEALTH of Pennsylvania**

v.

**Charles TWILLEY, Appellant.**

Superior Court of Pennsylvania.

Argued July 15, 1992.

Filed Sept. 2, 1992.

Aaron C. Finestone, Philadelphia, for appellant.

Joan Weiner, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CIRILLO, TAMILIA and POPOVICH, JJ.

TAMILIA, Judge:

Charles Twilley takes this appeal from the judgment of sentence imposed October 9, 1991. Appellant was found guilty in a jury trial of aggravated assault[1] and criminal conspiracy[2] and subsequently sentenced to a total term of four (4) to eight (8) years imprisonment. The charges arose from an incident after a high school dance in Philadelphia in which the victim was viciously attacked and beaten with a baseball bat by three men as the victim came to the defense

1. 18 Pa.C.S. § 2702.
2. *Id.,* § 903.

of two boys accosted by a gang of youths. The victim suffered a collapsed lung and multiple hemorrhages, brain contusions, broken ribs and skull fractures as a result of the attack. His attackers escaped in a black jeep-like truck, and appellant was later arrested as the driver of the getaway vehicle.

On appeal, appellant, who is white, first argues the trial court erred in denying his motion to strike the jury panel on the basis that the Commonwealth used all seven of its peremptory challenges against black venirepersons, thus creating a jury panel which was constituted in a racially discriminatory fashion.

In the case of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court placed the initial burden on the defendant to establish a prima facie case of purposeful discrimination in selection of the jury. A prima facie case of discrimination consists of three elements: 1) the defendant's membership in a cognizable racial group; 2) the prosecutor's use of peremptory strikes to exclude members of that group; and 3) an inference arising under the totality of the circumstances that the prosecutor used the strikes to exclude venirepersons on account of their race. *Batson, supra; Commonwealth v. Jackson,* 386 Pa.Super. 29, 562 A.2d 338 (1989) (en banc), allocatur denied, 525 Pa. 631, 578 A.2d 926 (1990). Once the defendant makes a prima facie showing, the burden shifts to the prosecution to come forward with a neutral explanation for challenging the disputed jurors. *Batson, supra,* 476 U.S. at 96–97, 106 S.Ct. at 1722–23, 90 L.Ed.2d at 87–88. Although *Batson* dealt with the exclusion of black jurors from a case involving a black defendant, the Supreme Court recently extended the protections of *Batson* to any case where the defendant makes a prima facie showing of discrimination, whether or not the defendant and the prospective jurors share racial identity. *Powers v. Ohio,* 499 U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Moreover, the fact that one or more blacks (or any

race) ultimately may be empaneled is not dispositive of the issue of discrimination.

As noted by Mr. Justice Marshall, the resulting presence of two blacks on a jury by itself in no way insulates the empanelment of that jury from an inference of discrimination. *Batson v. Kentucky,* 476 U.S. 79, 93–94, 106 S.Ct. 1712, 1727–28, 90 L.Ed.2d 69 (1986) (Marshall, J., concurring). Additionally, in *Powers v. Ohio,* 499 U.S. ——, ——, 111 S.Ct. 1364, 1371, 113 L.Ed.2d 411, 426 (1991). Justice Kennedy, speaking on behalf of the majority, observed that "A prosecutor's wrongful exclusion of a *juror* by a race-based peremptory challenge is a constitutional violation committed in open court at the outset of the proceedings. The overt wrong, often apparent to the entire jury panel, casts doubt over the obligation of the parties, the jury and indeed the court to adhere to the law throughout the trial of the cause." (Emphasis added). Apparently, therefore, the improper exclusion of a single juror based upon race, is sufficient to "taint" the proceedings and the number of members of his race that survives to remain on the jury is irrelevant for purposes of legitimizing the selection process and the ultimate empanelment.

*Commonwealth v. Dinwiddie,* 529 Pa. 66, 72 n. 10, 601 A.2d 1216, 1219 n. 10 (1992).

Turning to the case before us, we note that the venire consisted of 38 persons, of whom 24 were white, 13 were black and 1 was Hispanic. The jury chosen consisted of 9 whites and 3 blacks. The venire was conducted in several rounds, and after the second round appellant asked the district attorney to place on the record his reasons for striking two black venirepersons. At that time, 19 venirepersons had been examined, of whom 13 were white, 5 were black and 1 Hispanic. Of the 5 blacks, 1 was seated as a juror, 2 were excused by the trial court and 2 were rejected with peremptory strikes by the Commonwealth. The court, after in camera discussion with counsel for both parties, stated that at that point in the proceedings it was prema-

ture for the Commonwealth to defend its selection process, and deferred a decision on the issue until the conclusion of jury selection (N.T., 6/18/91, p. 109). Voir dire resumed and after several more rounds, a jury of 9 whites and 3 blacks was selected. Therefore, of the thirteen black venirepersons, three were excused by the court, three were seated as jurors and the remaining seven were rejected by the Commonwealth through peremptory challenges.

The following day, the trial court held a hearing on the issue and stated initially that the Commonwealth's exercise of all seven of its peremptory challenges against black venirepersons

at least raises the issue or makes it ripe enough for the Commonwealth at this point in time to justify its ... exercise of all seven challenges, and the issue, obviously, is one of whether or not the explanations given by the Commonwealth as to each of those black persons stricken by the Commonwealth were race neutral.

(N.T., 6/19/91, p. 4.) The prosecutor explained the basis of his objection to each of the seven stricken black venirepersons, after which the trial court discussed the applicable case law, analyzed the circumstances of each of the rejected venirepersons and ultimately concluded there was no indication that the peremptory strikes were racially motivated (*Id.*, 62–73).

█ Appellant argues "the explanations offered by the prosecutor for his strikes were so transparent that he failed to rebut the prima facie case of discrimination" (Brief of Appellant at 24). After sedulous review of the record, we cannot agree.

Racial discrimination in selection of jurors harms not only the accused whose life or liberty they are summoned to try. Competence to serve as a juror ultimately depends on an assessment of individual qualifications and ability impartially to consider evidence presented at a trial.

\* \* \* \* \* \*

The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice. Discrimination within the judicial system is most pernicious because it is "a stimulant to that race prejudice which is an impediment to securing to [black citizens] that equal justice which the law aims to secure to all others."

*Batson, supra,* 476 U.S. at 87–88, 106 S.Ct. at 1718, 90 L.Ed.2d at 81–82.

This Court must, therefore, balance the overwhelming desire that our judicial system not only be fair, but also appear to be fair, against our tradition of avoiding tampering with those decisions best made by the trial court, absent a manifest abuse of the court's discretion. Nowhere is that precept more important than in the instant case. Here, the trial court conducted a thorough hearing the day after voir dire was completed, analyzing each of the individuals stricken by the Commonwealth, as well as the prosecutor's reasons therefor. The trial court indicated it was troubled by some of the peremptory strikes, but nevertheless concluded under the totality of the circumstances the prosecutor's explanations were reasonable and nonpretextual. "Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." *Batson* at 98 n. 21, 106 S.Ct. at 1724 n. 21, 90 L.Ed.2d at 89 n. 21; *See Jackson, supra.*

As the trial court was in the best position to make the initial determination of whether discrimination occurred in jury selection, and as this Court with the clear vision of hindsight is unable to discern any abuse of discretion by the trial court, we find this claim without merit.[3]

---

**3.** The trial judge, who is black, noted at the hearing his sensitivity to the issue and "as an admonition, indicate[d] to all concerned that this Court takes this kind of allegation very, very seriously, and will ... do

■ Appellant next argues the trial court erred in denying the defense motion for a mistrial when, during cross-examination, a Commonwealth witness referred to a prior Philadelphia crime in which a teenager, who, like the victim here was the son of a police officer, was beaten to death with a baseball bat by a gang of youths. This claim is without merit, as is appellant's final claim, and we cite with approval a portion of the trial court Opinion addressing these issues.

As a general rule, the decision whether to declare a mistrial in a criminal prosecution rests within the sound discretion of the Trial Court and will not be reversed on appeal absent an abuse of discretion. *Commonwealth v. Nelson*, 389 Pa.Super. 417, 567, A.2d 673, 679 (1989); *Commonwealth v. Kubiac*, 379 Pa.Super. 402, 550 A.2d 219, 223, appeal denied 522 Pa. 611, 563 A.2d 496 (1988). Furthermore, "it is settled that not every irrelevant or unwise remark made in the course of a trial by a witness warrants the granting of a new trial." *Commonwealth v. Axe*, 285 Pa.Super. 289, 427 A.2d 227, 230 (1981). Rather, a new trial is only required when the remark is so prejudicial in its nature or substance or manner of delivery that it may reasonably be said to have deprived the defendant of a fair and impartial trial. *Id.* citing *Commonwealth v. Hales*, 384 Pa. 153, 119 A.2d 520 (1981) [ (1956) ]; See also *Commonwealth v. Goosby*, 450 Pa. 609, 611, 301 A.2d 673 (1973).

In the case at bar, Commonwealth witness, James Hughes, while on cross-examination, made reference to "a boy killed during the summer months in Port Richmond with a bat." (N.T., 6/20/91, p. 130). This remark was in reference to the Sean Dailey case, a highly publicized case where a policeman's son was beaten to death with a baseball bat. At no time, however, did the witness state the actual name of the case nor did he mention that

whatever is appropriate ... to make sure that every defendant, regardless of color, receives a fair and impartial trial consistent with *Batson v. Kentucky* [476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) ]" (N.T., 6/19/91, pp. 67, 73).

518

the victim in this case was the son of a police officer, too. Furthermore, immediately after the comment was made defense counsel objected and the Trial Judge had the remark stricken from the record and instructed the jury to disregard the remark in that it had nothing to do with the case at hand. (N.T. 6/20/91, p. 130).

Since the witness did not give the specific name of the case he was referring to, and since the fact that the victim was the son of a police officer did not come out at trial, it cannot be said that the defendant was so prejudiced by the remark to warrant a new trial. See *Commonwealth v. Axe, supra; Commonwealth v. Goosby, supra*. Furthermore, this Court gave an immediate cautionary instruction to the jury to disregard the remark which cured any possible prejudice which may have occured [sic].

Lastly, the defendant contends that the Trial Court erred in denying his Motion for a Mistrial presented during the closing argument of the Commonwealth when the prosecutor made use of a baseball bat and a forty-ounce bottle of beer in a brown paper bag as props, neither of which had been introduced as an exhibit.

As stated previously, the decision whether to declare a mistrial in a criminal prosecution rests within the sound discretion of the Trial Court and will not be reversed on appeal absent an abuse of discretion. *Commonwealth v. Nelson, supra*.

In the case at bar, it is undisputed that the victim was hit in the head with a baseball bat, thereby sustaining serious bodily injury. Both of the Commonwealth's eye-witnesses, Colleen Schmitt and John Hughes, testified that they observed the defendant with a wooden bat in his hand. [See N.T., Collen Schmitt, 6/19/91, p. 52] [See also N.T., John Hughes, 6/20/91, pp. 109, 112, 122]. It was the defendant himself who put the issue of the bat into question by testifying that he was not holding a bat in his hand, but rather, was holding a forty-ounce bottle of beer in a brown paper bag. [N.T., 6/21/91, pp. 514–516] The

defendant testified that the beer he was holding was approximately twelve inches in length where a baseball bat is closer to thirty-six inches. [N.T., 6/21/91, pp. 515–516] The defendant further testified that Commonwealth witness, John Hughes, was wrong when he said he saw the defendant with a bat in his hand. [N.T., 6/21/91, p. 515]

In his closing argument, the prosecutor held up a standard size bat and a forty-ounce beer in a brown paper bag for the jury to compare. [N.T., 6/24/91, p. 617]. At that time defense counsel objected to the use of these items since they were not admitted in evidence as exhibits. [N.T., 6/24/91, p. 617] A hearing was then held in the Trial Judge's anteroom to determine whether the prosecutor could use these props in his closing argument to the jury. The Trial Judge concluded that since there was testimony concerning these two items, and their respective sizes, there was nothing so prejudicial in showing the jury these items as to warrant a mistrial. [N.T., 6/24/91, p. 621] See *Commonwealth v. Williams,* 95 Dauph. 401, affirmed 458 Pa. 319, 326 A.2d 300 (1973) [ (1974) ]. However, the Trial Judge did restrict the prosecutor from showing both items to the jury at the same time. [N.T., 6/24/91, p. 622]

Since the Trial Judge is in the best position to determine the appropriate remedy, his decision will not be reversed absent an abuse of discretion. *Commonwealth v. Jones,* [501] Pa. [162], 460 A.2d 739, 741 (1983).

(Slip Op., Jones, II, J., 3/6/92, pp. 5–9.)

For the foregoing reasons, we affirm the judgment of sentence imposed in this case.

Judgment of sentence affirmed.