J-A21019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DELILAH CHILDS, AS ADMINISTRATOR OF THE ESTATE OF RUBY GRAY, DECEDENT | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : | |
| v. | : : : | |
| | : | No. 1971 EDA 2023 |
| GRAYHAWK PARTNERS, LLC A/K/A GRAYHAWK HOME CARE, PAIGE BANISTER JOHN DOE 1-THIRD PARTY STAFFING COMPANY, JOHN DOE 2-THIRD PARTY MANAGEMENT AND/OR OPERATIONS COMPANY | : : : : : : : | |

Appeal from the Judgment Entered December 13, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 201002364

BEFORE:  KUNSELMAN, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY NICHOLS, J.:  **FILED JULY 8, 2025**

Appellant Deliliah Childs, Administrator of the Estate of Ruby Gray (Decedent) appeals from the judgment entered following Appellant's personal injury action against Appellees Grayhawk Partners, LLC a/k/a Grayhawk Home Care and Paige Bannister.[1]  On appeal, Appellant challenges evidentiary rulings made by the trial court.  We affirm.

The trial court set forth the following factual and procedural history:

---

[1] The remaining defendants, John Doe 1-third party staffing company and John Doe 2-third party management and/or operations company, are not parties to the instant appeal.

On October 30, 2020, [Appellant] initiated this action [] for personal injury by complaint against Ms. Paige Bannister, a home health aide, and [Grayhawk Partners, LLC (Grayhawk)]. In her complaint, [Appellant] alleged that on October 31, 2018, Ms. Bannister negligently failed to use the installed Hoyer lift, or any other form of assistance, while transferring Decedent, aged 71, from her wheelchair to the bed; as a result of her failure to use assistance, Ms. Bannister dropped Decedent. [Appellant] alleged that as a result of being dropped, Decedent sustained serious injuries including a femur fracture requiring surgery, pain, immobility, and ultimately her death on January 20, 2020.

On April 10, 2023, the matter proceeded to a four-day trial.[2] Throughout trial, counsel for [Appellant] objected to [Appellees'] counsel's tactic of reading aloud and placing on a projection screen certain medical records, detailed below, including records from ChesPenn Health Services (CPHS), [Crozer] Chester Medical Center (CCMC), and Premier [Orthopaedics] & Sports Medicine (POSM) (collectively, the Disputed Records). The facts and testimony relevant to those issues (which form the focus of the appeal) are as follows.

[Appellant]—Decedent's niece—testified that Decedent moved to Pennsylvania in 2017 to live with [Appellant], [and] had her leg amputated shortly thereafter; as a result of her amputation, Decedent was wheelchair bound and received services through [Grayhawk]. Regarding the incident of October 31, 2018, [Appellant] recalled leaving the house after Ms. Bannister arrived, and receiving a call shortly afterward from her boyfriend informing her that Ms. Bannister dropped Decedent.

During cross-examination, [Appellees'] counsel questioned [Appellant] about Decedent's use of Eliquis and history of pulmonary embolisms and strokes. When [Appellant] could not recall whether Decedent took Eliquis for pulmonary embolisms, counsel sought to refresh her recollection using medical records from CPHS dated November 14, 2017, April 5, 2017, and December 7, 2018. Counsel placed the November 14, 2017 record on the projection screen in view of the jury and read from

---

[2] The parties stipulated as to negligence. *See* N.T. Trial, 4/12/23, at 33. The trial, therefore, was limited to causation and damages, which were limited to a survival action, as Appellant conceded that she did not have a viable claim of wrongful death. *See id.* at 36-37; 42 Pa.C.S. § 8302.

the record that "[i]mpressions [were] pulmonary embolism" and that Decedent was a poor candidate for Eliquis. Counsel then asked [Appellant] whether embolisms were a problem for Decedent; in response, [Appellant] denied ever seeing this medical record. When counsel moved to the April 5, 2017 record, the [trial court] prohibited it [from] being read aloud, and [Appellant] required her glasses to be able to read it. As for the December 7, 2018 record, the [trial court] wholly prohibited [Appellees'] counsel from placing the record on the screen as doing so was not proper procedure for impeachment.

In their case in chief, [Appellees] presented expert testimony . . . from Leonard Brody, M.D., a certified orthopedic surgeon who opined that Decedent's femur fracture did not cause her death 14 months later on January 20, 2020. During Dr. Brody's testimony, [Appellees'] counsel placed on the screen several records from [CCMC], including an operative note following surgery, an X-ray, hospital admission records from December 7, 2018 and February 17, 2019, and medical notes from December 30[, 2019] and January 1, 2019, and questioned Dr. Brody about these records as [they] related to embolisms. Dr. Brody expressly confirmed his familiarity with these records in connection with his review, all of which derive from Decedent's stays at CCMC.

[Appellees] also presented testimony from Dr. Bruce Silver, a certified internal medicine doctor and geriatrician who also opined that Decedent's femur fracture did not cause her death. Dr. Silver testified that he reviewed the Disputed Records from CCMC, CPHS, and POSM in forming his opinion, along with other records. On re-direct, [Appellees'] counsel questioned Dr. Silver regarding Decedent's stroke history as seen in a CAT scan from CCMC dated May 3, 2019, placing that record on the screen.

At the close of the evidence, the [trial court] prohibited counsel from using the Dispute[d] Records themselves during closing but permitted argument about them. The [trial court] "admitted" the Dispute[d] Records into evidence solely for the purpose of preserving the records for appeal. During closings, [Appellees'] counsel discussed the CCMC records reflecting stroke symptoms as revealed by their experts.

After deliberation, the jury found that both Grayhawk and Paige Bannister negligently caused Decedent's femur fracture, and awarded damages totaling $42,500.

On April 21, 2023, [Appellant] filed a motion for post-trial relief seeking a new trial, alleging the [trial court] erred in allowing [Appellees'] counsel to publish the Disputed Records to the jury. [The trial court] denied the motion on July 17, 2023. On July 21, [2023, Appellant] timely filed a notice of appeal.

Trial Ct. Op., 4/1/24, at 1-4 (citations omitted and some formatting altered).

Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Did the [trial court err] as a matter of law in failing to grant Appellant's motion for [a] new trial pursuant to [Pa.R.C.P.] 227.1(a)(1)?

   a. The [trial court] erred in allowing [Appellees'] counsel, during witness examinations, to publish to the jury the medical records of [Decedent] without those records being properly authenticated as required by Pennsylvania's rules of evidence and/or civil procedure including, but not limited to, Pa.R.E. 901(a) and 42 Pa.C.S. § 6108, and moved into evidence;

   b. The [trial court] erred in allowing [Appellees'] counsel, during witness examinations, to read aloud to the jury and the testifying witnesses the medical records of [Decedent] without those records being properly authenticated as required by Pennsylvania's rules of evidence and/or civil procedure including, but not limited to, Pa.R.E. 901(a) and 42 Pa.C.S. § 6108, and moved into evidence.

   c. The [trial court] erred in admitting the medical records of [Decedent] into evidence without those records being properly authenticated as required by Pennsylvania's rules of evidence and/or civil procedure including, but not limited to, Pa.R.E. 901(a) and 42 Pa.C.S. § 6108.

   d. The [trial court] erred in allowing [Appellees'] counsel, during closing arguments, to read aloud to the jury the medical records of [Decedent] without those records being properly authenticated as required by Pennsylvania's rules of evidence and/or civil

> procedure including, but not limited to, Pa.R.E. 901(a) and 42 Pa.C.S. § 6108.

Appellant's Brief at 5-6 (formatting altered).[3]

Appellant's claims relate to evidentiary rulings by the trial court. It is well settled that questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. *Commonwealth Fin. Sys., Inc. v. Smith*, 15 A.3d 492, 496 (Pa. Super. 2011). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Keystone Dedicated Logistics, LLC v. JGB Enters., Inc.*, 77 A.3d 1, 11 (Pa. Super. 2013) (citation omitted). In addition, "to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Winschel v. Jain*, 925 A.2d 782, 794 (Pa. Super. 2007) (citation and brackets omitted).

### Use of Medical Records to Cross-Examine Appellant

---

[3] While Appellant identifies four issues in her statement of questions presented, the argument section of her brief is divided into three sections. We note that the Pennsylvania Rules of Appellate Procedure require that the argument section of the brief be divided into as many parts as there are questions to be argued. Pa.R.A.P. 2119(a). Failure to do so may result in waiver. *Ramalingam v. Keller Williams Realty Grp., Inc.*, 121 A.3d 1034, 1042 (Pa. Super. 2015). While we do not condone Appellant's failure to comply with the Rules of Appellate Procedure, we find that the defect in Appellant's brief does not impede our ability to render meaningful appellate review; therefore, we decline to find waiver on this basis. *Id.*

In her first issue, Appellant contends that the trial court erred when it permitted Appellees to display Decedent's medical records on a projector screen and read aloud from the medical records during Appellees' cross-examination of Appellant. Appellant's Brief at 14-15. Specifically, Appellant argues that because the jury's only determinations were causation and damages, as Appellees had previously conceded negligence, "the prejudice suffered by Appellant due to Appellees presenting records that suggest [Decedent] was [non-compliant] with her medical care . . . was substantial as the improperly admitted evidence arguably served to bolster Appellees' position on causation." *Id.* at 18.

Appellees respond that it properly used Decedent's medical records as a means of refreshing Appellant's recollection during cross-examination. Appellees' Brief at 15. Appellees further argue that any prejudice that may have ensued was *de minimis*, and was, therefore, harmless error. *Id.* at 16.

This Court has held:

Medical records are admissible under the hearsay rules as evidence of facts contained therein but not as evidence of medical opinion or diagnosis. A party may introduce medical records as evidence of facts contained therein without producing the person who made the notation in the record or the records custodian.

*Turner v. Valley Housing Dev. Corp.*, 972 A.2d 531, 537 (Pa. Super. 2009) (citations omitted and formatting altered). The Pennsylvania Rules of Evidence require that in order to properly authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the

- 6 -

item is what the proponent claims it is." Pa.R.E. 901(a); *see also* 42 Pa.C.S. § 6108(b). Medical records may be authenticated by "[a]nyone with sufficient knowledge of the identity, preparation and maintenance of the record . . . ." *Folger ex rel. Folger v. Dugan*, 876 A.2d 1049, 1056 (Pa. Super. 2005) (citing *In re Indyk*, 413 A.2d 371, 373 (Pa. 1979)).

The Pennsylvania Rules of Evidence permit a witness to "use a writing or other item to refresh memory for the purpose of testifying while testifying, or before testifying." Pa.R.E. 612(a). This Court has held that a witness may use a writing "for the purpose of refreshing his [or her] memory **even though the writing itself may not be competent evidence**." *Dean Witter Reynolds, Inc. v. Genteel*, 499 A.2d 637, 641 (Pa. Super. 1985) (citations omitted and emphasis added). Our Supreme Court has cautioned, however, that "[w]hile it is true that a party may use a writing to refresh its own witness's recollection, that party has no right to treat the writing as evidence, by reading it or showing it or handing it to the factfinder." *Commonwealth v. Payne*, 317 A.2d 208, 210 (Pa. 1974) (citation omitted and some formatting altered).

Here, the trial court reached the following conclusion:

In total, [Appellees'] counsel questioned [Appellant] regarding three records from [CPHS]. Only the November 14, 2017 [CPHS] record was both placed on the screen for a brief moment and read aloud in an effort to refresh [Appellant's] recollection. The April 5, 2017 record was similarly placed on the screen . . . to refresh [Appellant's] recollection for a brief moment before moving on but, following [Appellant's] objections, the [trial court] prohibited counsel from reading it aloud.

The [trial court] took reasonable precautions to prevent [Appellees'] counsel from presenting the records directly to the jury as [Appellees'] counsel's questioning progressed. The first two records were displayed merely for a moment and contained a small font that was difficult to read, as indicated by [Appellant's] need to use her glasses to read the April 5, 2017 record. The [trial court] prohibited reading two of the three records entirely and wholly prohibited any display or reading aloud of the December 7, 2018 record. In sum, only one medical record over the course of a four-day trial was read to the jury. Once [Appellant] denied recollection of familiarity with the record, it was taken down.

Trial Ct. Op., 4/1/24, at 6-7 (citations omitted).

Based on our review of the record, we conclude that the trial court erred when it permitted Appellees' counsel to read aloud from Decedent's medical records that were not admitted into evidence. **See Payne**, 317 A.2d at 210 (stating that although a party may use a writing to refresh its witness's recollection, that party has no right to treat the writing as evidence, by reading it, showing it, or handing it to the factfinder). While we conclude that the trial court committed legal error, we must now determine whether this error constitutes reversible error.

"[T]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." **Winschel**, 925 A.2d at 794 (citation and brackets omitted); **see also Oxford Presbyterian Church v. Weil-McLain Co.**, 815 A.2d 1094, 1100 (Pa. Super. 2003). An appellant "must therefore show error in the evidentiary ruling and resulting prejudice, thus constituting an abuse of discretion by the lower court." **Oxford Presbyterian Church**, 815 A.2d at 1100 (citations omitted and some formatting altered). "An evidentiary ruling which did not affect the

verdict will not provide a basis for disturbing the [jury's] judgment." ***Peled***

***v. Meridian Bank***, 710 A.2d 620, 626 (Pa. Super. 1998) (citation omitted).

Our Supreme Court has observed that "[t]he harmless error doctrine

underlies every decision to grant or deny a new trial. . . . [T]he moving party

must demonstrate . . . that she has suffered prejudice from the mistake."

***Graham v. Check***, 243 A.3d 153, 161-62 (Pa. 2020) (footnote omitted).

> Harmless error exists if the record demonstrates either: (1) the error did not prejudice the [plaintiff] or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence [supporting the verdict] was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Ruffin v. Desh United Corp.***, 1755 EDA 2018, 2020 WL 4920013 at *4 (Pa.

Super. filed Aug. 21, 2020) (unpublished mem.)[4] (quoting ***Commonwealth***

***v. Hairston***, 84 A.3d 657, 671-72 (Pa. 2014)).

In her brief, Appellant provided the following argument pertaining to

whether she suffered prejudice as a result of the trial court's error:

> As evidenced from the trial record, Appellees' trial strategy was to establish that [Decedent's] death was a result of her suffering numerous strokes. Within the causation context, the prejudice suffered by Appellant due to Appellees presenting records that suggest [Decedent] was [non-compliant] with her medical care, is the opposite of *de minimis*. The prejudice suffered by Appellant was substantial as the improperly admitted evidence arguably

_____

[4] We may cite to this Court's unpublished memoranda filed after May 1, 2019 for persuasive value. Pa.R.A.P. 126(b).

served to bolster Appellees' position on causation. As such,
Appellant is entitled to a new trial.

Appellant's Brief at 18.

Based on our review of the record, we find that Appellant has not established that the trial court's error entitles her to a new trial. ***See Graham***, 243 A.3d at 161-62; ***Hairston***, 84 A.3d at 671-72. As discussed in more detail below, the evidence at issue was *de minimis* because the records at issue were utilized by the experts called by both parties. Indeed, the record reflects that one of Appellee's experts, Dr. Leonard Brody, M.D, testified that he reviewed Decedent's medical records from Grayhawk Home Healthcare, CCMC, CPHS, Mercy Hospital, and reports from Dr. Silver and Dr. Summit Gupta. ***See*** N.T. Dr. Brody Deposition, 4/10/23, at 14.[5] The record further reflects that Appellant's expert, Dr. Gupta, also reviewed Decedent's medical records from Grayhawk Home Healthcare, CCMC, CPHS, and Mercy Hospital. ***See*** N.T. Dr. Gupta Deposition, 4/10/23, at 26.[6] Accordingly, we conclude that Appellant is not entitled to relief on this issue.

**Use of Medical Records on Direct Examination of Appellees' Expert**

In her second issue, Appellant contends that the trial court erred when it permitted Appellees' counsel to read aloud from Decedent's medical records

___

[5] Counsel for the parties took a video deposition of Dr. Brody on April 10, 2023, which was then played in the presence of the jury during trial on April 12, 2023. ***See*** N.T. Trial, 4/12/23, at 23.

[6] Counsel for the parties took a video deposition of Dr. Gupta on April 10, 2023, both of which were then played in the presence of the jury during trial on April 11, 2023. ***See*** N.T. Trial, 4/11/23, at 54.

during direct examination of Dr. Brody. Appellant's Brief at 19-20. Appellant specifically argues that the trial court permitted Appellees to "circumvent the Pennsylvania Rules of Evidence by using the direct examinations of their experts to admit otherwise inadmissible evidence." *Id.* at 20.

In the context of expert testimony:

> "It is well-settled in Pennsylvania that a medical expert is permitted to express an opinion which is based, in part, on medical records which are not in evidence, but which are customarily relied on by experts in [his or] her profession." ***Sheely v. Beard***, 696 A.2d 214, 218 (Pa. Super. 1997). This rule which permits experts to express opinions relying on extrajudicial data depends on the circumstances of each particular case and demands the exercise of the trial court's sound discretion. ***Primavera v. Celotex Corp.***, 608 A.2d 515, 521 (Pa. Super. 1992). "An 'expert' should not be permitted simply to repeat another's opinion or data without bringing to bear on it his own expertise and judgment." ***Id.*** "Where . . . the expert uses several sources to arrive at his or her opinion, and has noted the reasonable and ordinary reliance on similar sources by experts in the field, and has coupled this reliance with personal observation, knowledge and experience, we conclude that the expert's testimony should be permitted." ***Id.***

***Collins v. Cooper***, 746 A.2d 615, 618-19 (Pa. Super. 2000) (some formatting altered).

Here, the trial court reached the following conclusion:

> [Appellees'] experts testified that they reviewed the CCMC, CPHS, and POSM records in reaching their opinions. While [Appellees'] counsel displayed and read numerous records from CCMC to Dr. Brody, the testimony plainly reflects that Dr. Brody reviewed and relied on these records in forming his opinion on the case. Similarly, Dr. Silver expressly testified that he reviewed these records at counsel's request in reaching his opinion. Accordingly, counsel was obligated to question Dr. Brody and Dr. Silver regarding these records.

Dr. Silver further testified that he reviewed the expert report of [Appellant's] expert, Dr. [] Gupta[]; Dr. Gupta's December 19, 2022 report reveals that he reviewed and relied upon all these records in forming his opinion. Therefore, this is not a case of unfair surprise; the fact that [Appellant's] own expert relied on these records demonstrates [Appellant] was aware of these records prior to trial. [Appellees] were entitled to question their experts about these records to present a full and fair defense to [Appellant's] claims.

Accordingly, [the trial court] did not abuse its discretion in allowing [Appellees'] counsel to properly question its own experts about the facts underlying their opinions. Further, the [trial court] reasonably allowed presentation and reading of the documents underlying those opinions—a procedure the [trial court] considered effective for determining the truth by allowing jurors to follow along, increasing comprehension of the complex medical opinion evidence.

Trial Ct. Op., 4/1/24, at 8-9 (citations omitted).

Based on our review of the record, we discern no abuse of discretion by the trial court. *See Smith*, 15 A.3d at 496. The record reflects that Dr. Brody testified in his video deposition, played at trial in the presence of the jury, that he reviewed a record pertaining to Decedent's December 7, 2018 admission to Crozer Medical Center. *See* N.T. Dr. Brody Deposition, 4/10/23, at 32. During direct examination, Appellees' counsel asked Dr. Brody if the record reflected that Decedent's "chief complaint presents as a stroke alert[.]" *Id.* at 33. Appellee's counsel continued to ask questions related to content contained within the December 7, 2018 record. *See id.* at 34-35. The record reflects that Appellant raised the issue of Dr. Brody using medical records in his video testimony before the trial court on April 11, 2023, and the trial court and both parties addressed this issue on the record outside of the presence of

the jury. The trial court determined that Appellee's counsel's examination of Dr. Brody was proper. **See** N.T. Trial, 4/11/23, at 3-10. Appellant did not continue her objection, nor did Appellant request a curative jury instruction. **See** N.T. Trial, 4/12/23, at 23.

As noted above, expert witnesses may rely upon material not otherwise admitted into evidence, may form an opinion based on that material, and express that opinion in trial testimony. **See Collins**, 746 A.2d at 618-19. Accordingly, the trial court did not abuse its discretion by permitting Appellee's counsel to question Dr. Brody about inadmissible medical records reviewed by the expert witness to form his opinion and, therefore, Appellant is not entitled to relief.

**Admission of Decedent's Medical Records into Evidence and Use of Medical Records during Closing Argument**

We address Appellant's next two issues together. Appellant alleges that the trial court erred when it admitted Decedent's hospital records into evidence. Appellant's Brief at 20. Specifically, Appellant argues that the trial court admitted the records into the trial record for the purpose of subsequent appellate review, which "is not a legally recognized basis to admit evidence in this Commonwealth." **Id.** at 21. Appellant also contends that the trial court erred when it permitted Appellees' counsel to recite from the disputed records during its closing statement to the jury. **Id.** at 22-23. In support, Appellant appears to argue that by permitting Appellees' counsel to reference the contents of the disputed records during closing, "[t]he practical effect of the

[trial court's] ruling was to permit the unauthenticated records to be used by the parties as substantive evidence. . . ." *Id.* at 22.

It is well settled that a "[c]losing argument is not evidence." *Commonwealth v. Page*, 965 A.2d 1212, 1223 (Pa. Super. 2009) (citation omitted). This Court has held that counsel may use items during closing arguments to assist the jury's understanding of the evidence. *W.C. v. Janssen Pharmaceuticals, Inc. (In re Risperdal Litigation)*, 174 A.3d 1110, 1117 (Pa. Super. 2017). The item need not have been admitted into evidence during the trial, so long "the trial court concludes that it accurately reflects the testimony elicited as evidence during trial." *Id.* (citing *Commonwealth v. Twilley*, 612 A.2d 1056, 1060 (Pa. Super. 1992)). The use of such items does not require authentication, as they are not evidence. *Id.* at 1118. Moreover, a "jury is presumed to follow the trial court's instructions." *Farese v. Robinson*, 222 A.3d 1173, 1184 (Pa. Super. 2019) (quoting *Commonwealth v. Cash*, 137 A.3d 1262, 1280 (Pa. 2016)).

In its Rule 1925(a) opinion, the trial court disputes that it admitted the disputed medical records into evidence. Instead, the trial court states that it permitted the records to be submitted "into the trial record to preserve them for appeal purposes." Trial Ct. Op., 4/1/24, at 10 (citing N.T. Trial, 4/13/24, at 10-11.). Regarding the use of the medical records during closing arguments, the trial court reached the following conclusion:

> The [trial court] did not allow [Appellees'] counsel to display the
> disputed records in closings, but—given they were properly
> testified to by [Appellees'] experts—allowed discussion of the

records during closings. [Appellees'] counsel subsequently discussed the CCMC records in closings regarding their reports of stroke symptoms as revealed through Dr. Silver. Accordingly, [Appellees'] argument found support from the record and [the trial court] did not abuse its discretion in so allowing such argument.

Trial Ct. Op., 4/1/24, at 9 (citations omitted).

Based on our review of the record, we cannot conclude that the trial court admitted the disputed records for use as substantive evidence. Indeed, the record reflects that the disputed records were added to the trial court record solely for the purpose of appellate review. *See* N.T. Trial, 4/13/23, at 10-11. Additionally, the record reflects that the trial court instructed the jury that statements made by counsel were not evidence. *See* N.T. Trial, 4/10/23, at 10. As noted previously, the jury is presumed to have followed the trial court's instruction. *See Farese*, 222 A.3d at 1184.

Moreover, Appellant has not alleged that the jury relied upon the disputed records in rendering its decision, as demonstrated by the fact that Appellant did not continue her objection to Appellees' counsel's closing argument, nor did Appellant request curative jury instructions. *See* N.T. Trial, 4/13/23, at 4-12, 56. Likewise, this Court has not relied upon the disputed records for its disposition of the instant appeal. In the event that the trial court did err in admitting the disputed records solely for the purpose of creating a record for appellate review, any such error is harmless because Appellant has failed to establish that she was prejudiced as a result. *See Graham*, 243 A.3d at 161-62; *Ruffin*, 2020 WL 4920013 at *4. For these reasons, we conclude that Appellant is not entitled to relief.

For these reasons, we affirm.

Judgment affirmed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/8/2025